IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| Patricia T. Patterson, | ) | C/A No. 0:09-2599-RMG-PJG |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Patricia T. Patterson ("Patterson"), who is self-represented, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").[1] Also pending before the court is Patterson's motion to reverse the ALJ's decision. (ECF No. 37.) Having carefully considered the parties' submissions and the record, the court concludes that the Commissioner's decision should be affirmed and Patterson's motion denied.

## ADMINISTRATIVE PROCEEDINGS

On October 2, 2006, Patterson applied for SSI and DIB. Patterson's applications were denied initially and on reconsideration and she requested a hearing before an administrative law judge

---

[1] To the extent that Patterson attempts to raise a claim pursuant to 42 U.S.C. § 1985, the court finds that such a claim does not meet the applicable pleading standard and is not properly before the court. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions").

("ALJ"). A hearing was held on September 12, 2008 at which Patterson, although informed of her right to representation, chose to represent herself and testify on her own behalf. The ALJ, after hearing the testimony of a vocational expert, issued a decision dated March 25, 2009 finding that Patterson was not disabled.

Patterson was fifty years old at the time of the ALJ's decision. She has at least a high school education and is able to communicate in English. (Tr. 112, 118.) She has past relevant work experience as a sales manager, transporter, certified nursing assistant, waitress, and small parts assembler. (Tr. 40-41, 190, 198.) Patterson alleges disability since November 14, 2005. (Tr. 112, 118, 189.)

The ALJ made the following findings and conclusions:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since November 14, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: residuals of hernia repair, facet disease at L4-5 and L5-S1, and status post right nephrectomy (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

\* \* \*

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), which involves lifting no more than 20 pounds at a time with frequent lifting and/or carrying of objects weighing up to ten pounds. The claimant needs a sit/stand option on an occasional basis and can only occasionally climb, balance, stoop, crouch, kneel or crawl. She is restricted from working around concentrated exposure to hazards such as

*PJG*

      moving machinery or unprotected heights. Due to her complaints of pain she is further limited to work performed at a non-productive pace.

* * *

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

* * *

7. The claimant was born on April 18, 1958, and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant attained age 50 as of April 18, 2008, and subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

* * *

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 14, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 58-64.)

Patterson filed an appeal and submitted additional evidence for consideration, which the Appeals Council admitted into the administrative record. (Tr. 5-6.) On August 10, 2009, the Appeals Council denied Patterson's request for review, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) Patterson filed this action on October 5, 2009.

*PJG*

# SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform [her] past relevant work; and

(5) whether the claimant's impairments prevent [her] from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d

866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775 (4th Cir. 1973).

## ISSUES

Patterson generally argues that the ALJ's opinion is not supported by substantial evidence and was reached through an incorrect application of the law. (Pl.'s Br., ECF No. 26.) Liberally construed, Patterson's brief appears to argue the following: (1) that the ALJ found her disabled at

PJG

Step Three of the sequential process and therefore erred in proceeding to Step Four; (2) that the ALJ erred in rejecting a portion of her treating physician's opinion; (3) that the ALJ erred in discounting her credibility; (4) that based on the vocational expert's testimony, the ALJ should have determined that Patterson was entitled to benefits; and (5) that she was denied due process.[2]

## DISCUSSION

**A.    Step Three**

Patterson first appears to allege that the ALJ found that she was disabled at Step Three and therefore erred in continuing to proceed through the sequential process. (See Pl.'s Br. at 20, 40-41, ECF No. 26 at 20, 40-41; Pl.'s Reply Br. at 7, ECF No. 34 at 8.) In support of this contention, Patterson relies on the ALJ's first three findings and conclusions, which state:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
> 2. The claimant has not engaged in substantial gainful activity since November 14, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
> 3. The claimant has the following severe impairments: residuals of hernia repair, facet disease at L4-5 and L5-S1, and status post right nephrectomy (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

(Tr. 58.) However, these findings address Steps One and Two of the sequential process. With regard to Step Three, the ALJ found that Patterson "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 59.) Therefore, contrary to Patterson's assertion, the ALJ clearly did

---

[2] Patterson also argues that she is entitled to a default judgment based on her allegation that the defendant's answer was untimely filed. This exact allegation has previously been rejected by the court following multiple motions for default judgment filed by Patterson. (See ECF No. 38.) As this issue has been ruled on, it is not further discussed in this Report and Recommendation. Additionally, Patterson appears to present argument regarding her standing to sue and the court's jurisdiction over this matter. Neither of these issues is in dispute, and therefore the court need not address them.

not find her disabled at Step Three. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (stating that Step Three asks "whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 . . . , and is thus presumptively disabled"). To the extent that Patterson is arguing that the presence of severe impairments alone is sufficient to satisfy Step Three, such an argument is without merit. Compare Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria."); 20 C.F.R. §§ 404.1525(d), 416.925(d) (stating that diagnosis alone is insufficient to meet a listing); §§ 404.1526, 416.926 (explaining the requirements for impairments to be medically equivalent to a listing) with §§ 404.1520(c), 416.920(c) (defining a severe impairment as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities").

Patterson also appears to assert that based on her functional limitations, the ALJ should have concluded that she met the requirements of Listing 1.04.[3] (Pl.'s Br. at 30, ECF No. 26 at 30 (citing Listing 1.04 and 1.00(B)(2)(c)); see generally Pl.'s Reply Br. at 6-26, ECF No. 34 at 7-27.) "For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria." Sullivan, 493 U.S. at 530 (emphasis added). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the Listing of that impairment. 20 C.F.R. §§ 404.1525(d), 416.925(d); see also Bowen v. Yuckert, 482 U.S. 137, 146 (1987) (noting that the burden is on the claimant to establish that his impairment is disabling at Step 3); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (same). The Commissioner compares

---

[3] In her reply brief, Patterson also appears to indicate that she meets former Listings 386.03 and 385.07, which are currently evaluated under Listings 5.00 (Digestive System - Adult) and 6.00 (Genitourinary Impairments). However, there is no evidence in the record that would demonstrate Patterson meets the criteria under any of the Listings in these sections.

Page 7 of 19

PJG

the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. 20 C.F.R. §§ 404.1508, 416.908. The Commissioner can also determine that the claimant's impairments are medically equivalent to a Listing, which occurs when an impairment is at least equal in severity and duration to the criteria of a Listing. 20 C.F.R. §§ 404.1526(a), 416.926(a).

An impairment meets or medically equals Listing 1.04 if the impairment is a disorder of the spine that results in compromise of the nerve root or the spinal cord with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. There is no evidence in the record that Patterson meets the requirements of subpart B or C of Listing 1.04. Further, the medical evidence does not indicate nerve root compression, motor loss, sensory loss, reflex loss, or positive straight-leg raising tests, which are required to meet subpart A. (See, e.g., Tr. 313, 323-24, 339.)

In arguing that she meets a Listing, Patterson relies heavily on the introductory comments to the Musculoskeletal Listings, which are contained in Section 1.00. (See, e.g., Pl.'s Reply Br. at 14, ECF No. 34 at 15.) These comments provide information pertaining to the Listings contained

Page 8 of 19
PJG

in the musculosketal section, such as definitions. 20 C.F.R. §§ 404.1525(c), 416.925(c) (explaining that each body system section in the Listings consists of two parts: "an introduction, followed by the specific listings"). To meet a Listing, a claimant must "satisf[y] all of the criteria of [the specific] listing, including any relevant criteria in the introduction." Id. Therefore, satisfaction of the introductory comments alone is insufficient to meet a Listing.

Based on the foregoing, Patterson has failed to demonstrate that she meets or medically equals the criteria to satisfy a Listing. See 20 C.F.R. §§ 404.1525(d), 416.925(d); Sullivan, 493 U.S. at 530; Bowen, 482 U.S. at 146. Accordingly, Patterson cannot demonstrate that the ALJ's opinion at Step Three was not supported by substantial evidence.

**B.      Residual Functional Capacity**

Patterson argues that the ALJ erred in conducting her residual functional capacity ("RFC") assessment. As stated above, the ALJ determined that Patterson retained the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), which involves lifting no more than 20 pounds at a time with frequent lifting and/or carrying of objects weighing up to ten pounds. The claimant needs a sit/stand option on an occasional basis and can only occasionally climb, balance, stoop, crouch, kneel or crawl. She is restricted from working around concentrated exposure to hazards such as moving machinery or unprotected heights. Due to her complaints of pain she is further limited to work performed at a non-productive pace**.**

(Tr. 60.) Patterson appears to argue that the ALJ erred in discounting the opinion of her treating physician and her subjective complaints of pain. Patterson relies primarily on the additional evidence that she submitted to the Appeals Council and testimony from her hearing before the ALJ. For the reasons that follow, the court finds that, viewing the record as a whole and considering the additional evidence, the ALJ's RFC assessment is supported by substantial evidence.

*PJG*

1. **Treating Physician**

Patterson appears to assert that the ALJ erred in failing to give the entirety of an opinion of her treating physician, Dr. George L. David, Jr., proper weight. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "If [the Commissioner] finds that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, [the Commissioner] will give it controlling weight." Id.; cf. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*) ("Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not *require* that the testimony be given controlling weight.") (emphasis added). If controlling weight is not accorded, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

By letter dated September 9, 2008, Dr. David stated that he had operated on Patterson's hernia and that Patterson was given a reasonable time before being released to return to work.

*PJG*

However, his letter indicates that she had difficulty with discomfort and lifting when she returned. Eventually, Dr. David determined there was nothing more he could do for Patterson. Dr. David noted that Patterson was seen by a neurosurgeon who recommended that Patterson not work over four hours and not lift more than ten pounds. Dr. David stated that "[w]e certainly did not disagree with this." Finally, Dr. David indicated that because of her continued complaints, he recommended Patterson find another physician. (Tr. 388.) Dr. David concluded that if Patterson could not "fit into any job description" she "should be declared disabled." (Tr. 389.)

The ALJ found that the medical evidence of record did not support Dr. David's opinion that Patterson "should be restricted from lifting more than ten pounds or working more than four hours." (Tr. 62.) The ALJ noted that Patterson had been seen by several specialists and the records currently before him did not reveal that any of the specialists placed such restrictions on her. Further, the ALJ stated that "[o]ther than mild facet disease at L4-5 and L5-S1, the evidence does not show that [Patterson] has any significant problems that would cause her to experience the degree of pain she has alleged." (Id.) The ALJ also observed that Patterson's physical examinations have been unremarkable and that Dr. David noted that he was unable to find any further problem.

Patterson primarily asserts that the restrictions in Dr. David's opinion were supported based on several forms completed by specialists in connection with her workers' compensation claim.[4] (Tr. 391, 413, & 430-31.) The first form, dated September 1, 2004, was completed by Dr. David for Patterson's employer at that time, AutoZone. It indicated significant limitations in Patterson's standing and lifting; however, on the form Dr. David estimated that Patterson could return to regular

---

[4] The court observes that these forms were submitted for the first time to the Appeals Council after the ALJ's decision. These documents were made part of the record, but the Appeals Council determined that they did not provide a basis for changing the ALJ's decision. (Tr. 2, 5-6.)

*PJG*

work on September 20, 2004. (Tr. 391.) The next form, dated November 3, 2004, was completed by Mackey Family Practice and is entitled "Worker's Compensation." It also indicated that Patterson continued to have significant restrictions and stated that her next appointment was scheduled for November 14, 2004. (Tr. 413.) The last form, dated February 14, 2006, was completed for AutoZone by Dr. John A. Welshofer, one of Patterson's treating physicians. This form indicated that Patterson could return to work on January 26, 2006 with certain restrictions. These restrictions appear to include limiting Patterson to four hours of work per day and lifting less than ten pounds. On the second page, Dr. Welshofer stated that Patterson "is to be scheduled for an Open MRI." (Tr. 431.) He also indicated that he would make further treatment recommendations after receiving the results from the MRI and that he could not offer an opinion at that time as to when there would be a significant change in Patterson's functional ability. Accordingly, this form does not indicate how long Dr. Welshofer recommended these restrictions, but they appear to be temporary pending the results of the MRI. The record reflects that upon receiving the MRI results, Dr. Welshofer indicated that he could only provide symptomatic treatment. (Tr. 321.) However, the record does not indicate that Patterson continued to receive any further treatment from Dr. Welshofer following the MRI and is devoid of any functional assessments following the MRI.

As stated above, the ALJ is not required to give a treating physician's opinion controlling weight and may accord it less weight for a variety of reasons. Hunter, 993 F.2d at 35; Johnson, 434 F.3d at 654. In this case, the ALJ discussed in detail his reasons for not accepting all of Dr. David's opinions. Even considering the additional evidence submitted to the Appeals Council, the court is not persuaded that the ALJ's conclusions are unsupported. Blalock, 483 F.2d at 775 (4th Cir.1973) (stating that even if the court disagrees with the Commissioner's decision, the court must uphold it

if it is supported by substantial evidence). The documents Patterson repeatedly relies on to reflect the limitations she advances indicate restrictions on Patterson's functional limitations for a specified, limited time period. Patterson has failed to point to any clinical evidence that would support her assertion that these restrictions are ongoing. Moreover, Dr. David's opinion itself undermines the supportability of these restrictions by stating that "*I believe* that doctors at this point in time have stated that [Patterson] should not lift over ten pounds at work and I have said over a four-hour period." (Tr. 389) (emphasis added).

As stated above, on review the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589. Accordingly, upon review of the ALJ's decision and the medical evidence, including the additional evidence submitted to the Appeal Council, the court finds substantial evidence to support the ALJ's decision to accord a portion of Dr. David's opinion less than full weight. See, e.g., Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (upholding the ALJ's finding that two treating physicians' opinions were entitled to minimal weight, in part, because the opinions were in the form of a checklist, unsupported by objective evidence, and based on the claimant's subjective complaints).

### 2. Patterson's Credibility

The United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). In this matter only the second step is at issue,[5] during which the

---

[5] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).

ALJ must expressly consider "the intensity and persistence of the claimant's pain[] and the extent to which it affects her ability to work." Id. at 595.

At issue is whether the ALJ properly evaluated Patterson's subjective complaints regarding the intensity and persistence of her pain and the extent to which they affect her ability to work. See Craig, 76 F.3d at 594. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints of pain itself or its severity "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Id. Further, "[i]n analyzing a claimant's subjective complaints, such as pain, an ALJ must consider: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the condition; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)).

PJG

In this case, the ALJ expressly considered several factors in discounting the credibility of Patterson's subjective complaints of pain, including not only Patterson's testimony but also the medical and non-medical evidence. (Tr. 60-63.) Specifically, after discussing the objective medical evidence, the ALJ noted that although Patterson donated a kidney to her daughter in January 2005, the evidence showed that she was able to return to work after the surgery. Patterson stated that she was restricted in her sitting, but she testified that her activities of daily living included sitting around the house. Patterson also attended church (although she missed the past three Sundays); cooked; did the dishes; did the laundry with assistance; was able to make the beds and drive; went to the store; ran errands; read approximately three hours per day; and accessed the internet daily to check her e-mail. Finally, the ALJ observed that although Patterson testified that her pain level was a nine to nine and a half during the hearing, she did not exhibit any pain behaviors and walked normally without a cane. (Tr. 62.)

There is substantial evidence supporting the ALJ's finding that Patterson's complaints regarding the effects of her symptoms are inconsistent with the record. See Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (noting that a claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints); Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (stating that "[t]he only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life" and noting that the absence of ongoing medical treatment can discredit a claimant's allegations); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (noting that "[i]f a symptom can be

reasonably controlled by medication or treatment, it is not disabling"). While Patterson may point to selective evidence to the contrary—such as additional statements from her sons and a friend submitted to the Appeals Council (see Tr. 244-46)—the court may not substitute its judgment for the Commissioner's and finds that the ALJ's conclusions are comfortably within the bounds of the substantial evidence standard. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).

C.     **Vocational Expert's Testimony**

Patterson argues that based on the vocational expert's testimony, the ALJ should have determined that she was entitled to benefits. Her argument appears to rest on two assertions. First, Patterson contends that because the vocational expert testified that she could not return to her previous work, then she was disabled. This argument misapprehends the law. Step Four of the sequential analysis asks whether the claimant can perform her past relevant work. Answering this question in the negative does not automatically result in a determination in favor of the claimant; rather, it requires the ALJ to proceed to the next step in the sequential process, which the ALJ did in this case.

Second, Patterson argues that the vocational expert testified that she would be unable to work; however, this argument hinges on the additional restrictions to Patterson's RFC that the ALJ rejected. The court observes that the ALJ presented the vocational expert with a hypothetical question that included all of the limitations that were contained in Patterson's RFC assessment. (Tr.

41); see also English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993) ("In questioning a vocational expert in a social security disability insurance hearing, the ALJ must propound hypothetical questions to the expert that are based upon a consideration of all relevant evidence of record of the claimant's impairment."). The ALJ's hypothetical question consisted of Patterson's RFC as determined by the ALJ and in response, the vocational expert provided three occupations that Patterson would be able to perform. (Tr. 41-42); see also Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (noting that "the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*") (emphasis in original); Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) ("In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [the] claimant's impairments.") (internal citations omitted). Accordingly, Patterson's arguments are without merit.

**D.     Other Allegations**

Patterson repeatedly argues that she was denied due process and equal protection under the law. However, it is unclear what action or actions these allegations are based upon. A review of the record reveals that Patterson has availed herself to each level of the appellate process in this matter. Patterson has not demonstrated that the Commissioner failed in any manner to comply with the regulations and laws governing review or hearing procedures. See 20 C.F.R. §§ 404.900-.999d (Subpart J—Determinations, Administrative Review Process, and Reopening of Determinations and Decisions). To the extent that Patterson bases these claims on her assertion that the ALJ failed to develop the record, the court finds this allegation without support, as Patterson has not presented any evidence that was not presented either to the ALJ or the Appeals Council. (See, e.g., Pl.'s Br. at 36,

ECF No. 26 at 36) (admitting that new medical documentation was submitted on May 22, 2009 that outweighed all the evidence in the record and was "unfortunately" made part of the record). Accordingly, the court finds these claims without merit.

**RECOMMENDATION**

Patterson has failed to show that the Commissioner's decision was unsupported by substantial evidence or reached through misapplication of the correct legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed and that Patterson's motion to reverse the ALJ's decision (ECF No. 37) be denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

August 24, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

>Larry W. Propes, Clerk
>United States District Court
>901 Richland Street
>Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).