IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

RECEIVED
CHARLESTON, SC
2010 NOV 30 A 10: 28

| | |
|---|---|
| Patricia T. Patterson, | Civil Action No. 0:09-cv-2599-RMG |
| Plaintiff, | |
| vs. | ORDER |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Patricia T. Patterson ("Patterson" or sometimes "Plaintiff") filed this action seeking judicial review of a final decision of Defendant Commissioner of Social Security denying Plaintiff's application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to a United States Magistrate Judge for pretrial handling. As detailed herein, after a *de novo* review of the Record and Plaintiff's objections, this Court adopts the Report and Recommendation of the Magistrate Judge.

### Background

Plaintiff sought benefits arising out of her alleged inability to work. Plaintiff claimed she was disabled due to back problems, issues related to the removal of her right kidney, "residuals" from a hernia repair, and facet disease.

The ALJ issued an order denying benefits. The Magistrate Judge issued a Report and Recommendation recommending that the decision of the Commissioner denying benefits be affirmed. (Dkt. No. 44). Plaintiff objected to the Magistrate Judge's Report and Recommendation. (Dkt. No. 47).

1

## Standard of Review

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b) (1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the

[Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

The Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Commissioner's findings of fact are not binding, however, if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.1987).

## Law/Analysis

This Court has reviewed the Record *de novo*, including Plaintiff's objections. While Plaintiff, in large part, relies on prior briefing and arguments therein presented to and addressed by the Magistrate Judge (*compare* Dkt. No. 26 *with* Dkt. No. 47) , this Court has explained below why affirmance is warranted after a *de novo* review of the Record and after considering Plaintiff's objections.

Construing her arguments as best as the Court can, Patterson appears to mainly contend that the ALJ's opinion is not supported by substantial evidence and was reached through an incorrect application of the law. (Dkt. No. 26). As outlined herein, this Court agrees with the recommendation of the Magistrate Judge and affirms the Commissioner's decision to deny Plaintiff's request for benefits.

### A.  Alleged Disability Finding at Step Three

Patterson would seem to allege that the ALJ found that she was disabled at Step Three and therefore erred in continuing to proceed through the sequential process. (*See* Pl.'s Br. at 20, 40-41, Dkt. No. 26 at 20, 40-41; Pl.'s Reply Br. at 7, Dkt. No. 34 at 8.; Pl's Objections at Dkt. No. 47). With regard to Step Three, the ALJ found that Patterson

"does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 59). Therefore, contrary to Patterson's assertion, the ALJ clearly did not find her disabled at Step Three. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (stating that Step Three asks "whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 . . . , and is thus presumptively disabled"). To the extent that Patterson is arguing that the presence of severe impairments alone is sufficient to satisfy Step Three, such an argument is without merit. *Compare Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria."); 20 C.F.R. §§ 404.1525(d), 416.925(d) (stating that diagnosis alone is insufficient to meet a listing); §§ 404.1526, 416.926 (explaining the requirements for impairments to be medically equivalent to a listing) with §§ 404.1520(c), 416.920(c) (defining a severe impairment as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities").

Patterson also appears to assert that based on her functional limitations, the ALJ should have concluded that she met the requirements of Listing 1.04. (Pl.'s Br. at 30, Dkt. No. 26 at 30 (citing Listing 1.04 and 1.00(B)(2)(c)). But "[f]or a claimant to show that [her] impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan*, 493 U.S. at 530 (emphasis added). The Record contains no evidence that Plaintiff meets the requirements of subpart B or C of Listing 1.04. Further, the medical evidence does not indicate nerve root compression, motor loss, sensory loss, reflex loss,

4

or positive straight-leg raising tests, which are required to meet subpart A. (*See, e.g.*, Tr. 313, 323-24, 339.)

Patterson primarily relies on the introductory comments to the Musculoskeletal Listings, which are contained in Section 1.00. (*See, e.g.*, Pl.'s Reply Br. at 14, Dkt. No. 34 at 15.) These comments provide information pertaining to the Listings contained in the musculosketal section, such as definitions. 20 C.F.R. §§ 404.1525(c), 416.925(c) (explaining that each body system section in the Listings consists of two parts: "an introduction, followed by the specific listings"). To meet a Listing, a claimant must "satisf[y] all of the criteria of [the specific] listing, including any relevant criteria in the introduction." *Id.* Therefore, satisfaction of the introductory comments alone is insufficient to meet a Listing.

Accordingly, Plaintiff has failed to demonstrate that she meets or medically equals the criteria to satisfy a Listing. *See* 20 C.F.R. §§ 404.1525(d), 416.925(d); *Sullivan*, 493 U.S. at 530. Thus, Plaintiff cannot demonstrate that the ALJ's opinion at Step Three was not supported by substantial evidence.

### B. Residual Functional Capacity

Plaintiff also contends that the ALJ erred in conducting her residual functional capacity ("RFC") assessment. As stated above, the ALJ determined that Patterson retained the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), which involves lifting no more than 20 pounds at a time with frequent lifting and/or carrying of objects weighing up to ten pounds. The claimant needs a sit/stand option on an occasional basis and can only occasionally climb, balance, stoop, crouch, kneel or crawl. She is restricted from working around concentrated exposure to hazards

such as moving machinery or unprotected heights. Due to her complaints of pain she is further limited to work performed at a non-productive pace. (Tr. 60). Patterson appears to argue that the ALJ erred in discounting the opinion of her treating physician and her subjective complaints of pain. Patterson relies primarily on the additional evidence that she submitted to the Appeals Council and testimony from her hearing before the ALJ. But viewing the record as a whole, the ALJ's RFC assessment is supported by substantial evidence.

### 1. Treating Physician

Patterson appears to assert that the ALJ erred in failing to give the entirety of an opinion of her treating physician, Dr. George L. David, Jr., proper weight. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "If [the Commissioner] finds that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, [the Commissioner] will give it controlling weight." *Id.* If controlling weight is not accorded, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). In

the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). By letter dated September 9, 2008, Dr. David stated that he had operated on Patterson's hernia and that Patterson was given a reasonable time before being released to return to work. However, his letter indicates that she had difficulty with discomfort and lifting when she returned. Eventually, Dr. David determined there was nothing more he could do for Patterson. Dr. David noted that Patterson was seen by a neurosurgeon who recommended that Patterson not work over four hours and not lift more than ten pounds. Dr. David stated that "[w]e certainly did not disagree with this." Finally, Dr. David indicated that because of her continued complaints, he recommended Patterson find another physician. (Tr. 388.) Dr. David concluded that if Patterson could not "fit into any job description" she "should be declared disabled." (Tr. 389.)

The ALJ found that the medical evidence of record did not support Dr. David's opinion that Patterson "should be restricted from lifting more than ten pounds or working more than four hours." (Tr. 62.) The ALJ noted that Patterson had been seen by several specialists and the records currently before him did not reveal that any of the specialists placed such restrictions on her. Further, the ALJ stated that "[o]ther than mild facet disease at L4-5 and L5-S1, the evidence does not show that [Patterson] has any significant problems that would cause her to experience the degree of pain she has alleged." (Id.) The ALJ also observed that Patterson's physical examinations have been unremarkable and that Dr. David noted that he was unable to find any further problem.

In this case, the ALJ discussed in detail his reasons for not accepting all of Dr. David's opinions. Even considering the additional evidence submitted to the Appeals

7

Council, the court is not persuaded that the ALJ's conclusions are unsupported. *Blalock*, 483 F.2d at 775 (4th Cir.1973) (stating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence). The documents Patterson repeatedly relies on to reflect the limitations she advances indicate restrictions on Patterson's functional limitations for a specified, limited time period. Patterson has failed to point to any clinical evidence that would support her assertion that these restrictions are ongoing. Moreover, Dr. David's opinion itself undermines the supportability of these restrictions by stating that "I believe that doctors at this point in time have stated that [Patterson] should not lift over ten pounds at work and I have said over a four-hour period." (Tr. 389).

Accordingly, upon review of the ALJ's decision and the medical evidence, including the additional evidence submitted to the Appeal Council, the Record contains substantial evidence to support the ALJ's decision to accord a portion of Dr. David's opinion less than full weight.

### 2. Patterson's Credibility

The United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). In this matter only the second step is at issue, during which the ALJ must expressly consider "the intensity and persistence of the claimant's pain[] and the extent to which it affects her ability to work." Id. at 595.

At issue is whether the ALJ properly evaluated Patterson's subjective complaints regarding the intensity and persistence of her pain and the extent to which they affect her

ability to work. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence." *Id.* "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." *Craig*, 76 F.3d at 595. A claimant's subjective complaints of pain itself or its severity "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." *Id.*

In this case, the ALJ expressly considered several factors in discounting the credibility of Patterson's subjective complaints of pain, including not only Patterson's testimony but also the medical and non-medical evidence. (Tr. 60-63.) The ALJ noted that although Patterson donated a kidney to her daughter in January 2005, the evidence showed that she was able to return to work after the surgery. Patterson stated that she was restricted in her sitting, but she testified that her activities of daily living included sitting around the house. Patterson also attended church (although she missed the past three Sundays); cooked; did the dishes; did the laundry with assistance; was able to make the beds and drive; went to the store; ran errands; read approximately three hours per day;

and accessed the internet daily to check her e- mail. Finally, the ALJ observed that although Patterson testified that her pain level was a nine to nine and a half during the hearing, she did not exhibit any pain behaviors and walked normally without a cane. (Tr. 62.)

Thus, the Record contains substantial evidence supporting the ALJ's finding that Patterson's complaints regarding the effects of her symptoms are inconsistent with the record. See *Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (noting that a claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints).

### C.     Vocational Expert's Testimony

Patterson argues that based on the vocational expert's testimony, the ALJ should have determined that she was entitled to benefits. Patterson contends that because the vocational expert testified that she could not return to her previous work, then she was disabled. This argument is without merit. Step Four of the sequential analysis asks whether the claimant can perform her past relevant work and if the answer is no, the ALJ to proceed to the next step in the sequential process—the ALJ did so in this case.

Patterson contends that the vocational expert testified that she would be unable to work. But the ALJ rejected the additional restrictions to Patterson's RFC. The court observes that the ALJ presented the vocational expert with a hypothetical question that included all of the limitations that were contained in Patterson's RFC assessment.

(Tr.41); *see also English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993) ("In questioning a vocational expert in a social security disability insurance hearing, the ALJ must propound hypothetical questions to the expert that are based upon a consideration of all relevant evidence of record of the claimant's impairment."). The ALJ's hypothetical question consisted of Patterson's RFC as determined by the ALJ and in response, the vocational expert provided three occupations that Patterson would be able to perform. (Tr. 41-42); *see also Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (noting that "the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations") (emphasis in original); *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [the] claimant's impairments.") (internal citations omitted). Accordingly, Patterson's arguments are without merit.

### D. Other Allegations

Patterson repeatedly argues that she was denied due process and equal protection under the law. However, it is unclear what action or actions these allegations are based upon. A review of the record reveals that Patterson has availed herself to each level of the appellate process in this matter. Patterson has not demonstrated that the Commissioner failed in any manner to comply with the regulations and laws governing review or hearing procedures. Accordingly, the court finds these claims without merit.

## Conclusion

Patterson has failed to show that the Commissioner's decision was unsupported by substantial evidence or reached through misapplication of the correct legal standard. See 42 U.S.C. § 405(g). Thus, the Commissioner's decision is **affirmed** and Patterson's motion to reverse the ALJ's decision (Dkt. No. 37) is **denied**. Further, Plaintiff's motion for immediate *de novo* review is rendered **moot** by this Order as the Court has conducted a *de novo* review of the matter. (Dkt. No. 50).

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

November 29, 2010
Charleston, South Carolina